UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| RICHARD MOSLEY and ALISA MCMILLAN, *on behalf of themselves and all others similarly situated*, | ) ) ) | No. 6:23-CV-20-REW |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | OPINION AND ORDER |
| v. | ) ) | |
| EZRICARE LLC, *et al.*, | ) ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

## I.  Background

Plaintiffs Richard Mosley and Alisa McMillan bring an individual and putative class action lawsuit against Defendants EzriCare LLC ("EzriCare"), EzriRx LLC ("EzriRx"), Delsam Pharma LLC ("Delsam"), and Global Pharma Healthcare Private Ltd. ("Global Pharma")[1].  *See* Am. Compl. (DE 54).   Plaintiffs' claims stem from their use and purchase of Defendants' artificial tears products, specifically, EzriCare Artificial Tears and Delsam Pharma Artificial Tears.  *See id.* ¶ 1.  Plaintiffs allege that Defendants "manufactured, imported, sold, marketed, labeled, and distributed" EzriCare Artificial Tears and Delsam Pharma Artificial Tears.  *Id.* These products were "adulterated and contaminated" with *Pseudomonas aeruginosa*, a drug-resistant bacteria.  *Id.*  According to Plaintiffs, the artificial tears products became contaminated due to Defendants' violations of standard manufacturing practices.  *See id.*  Moreover, in labeling their artificial tears products, Defendants allegedly failed to adequately inform consumers that

---

[1] Plaintiffs have yet to properly serve Global Pharma.  *See* DE 130 (Minute Entry).

the products were compromised and unsafe.  *See id.* ¶¶ 5–6.  As a result, Plaintiffs claim that they (and the putative class members) have "suffered economic damages."  *Id.* ¶ 1.

Global Pharma is the purported manufacturer of the contaminated artificial tears products and maintains its manufacturing facilities in India.  *See id.* at p. 13 n.20.  Global Pharma is incorporated and headquartered in India.  *Id.* ¶ 10.  The remaining defendants sell the artificial tears products manufactured by Global Pharma under their respective brand names.  *See id.* ¶¶ 12, 18–19.  EzriCare and EzriRx share the same headquarters in New Jersey; EzriCare is a New Jersey LLC, while EzriRx is (alleged as) incorporated in Delaware.  *Id.* ¶¶ 7–8.  "EzriCare" is a trademark licensed and registered by EzriRx.  *Id.* ¶ 7.  Delsam is a New York LLC headquartered in New York.  *Id.* ¶ 9.  Although Defendants are not physically located in Kentucky, Plaintiffs state that Defendants have "marketed, promoted, distributed, and sold EzriCare Artificial Tears and Delsam Pharma's Artificial Tears in Kentucky."  *Id.* ¶ 3.  Moreover, Defendants are "authorized to conduct and do business in Kentucky," and engage in "promotion, sales, distribution, and marketing" within Kentucky.  *Id.*[2]

The U.S. Center for Disease Control first detected the presence of *Pseudomonas aeruginosa* in the EzriCare Artificial Tears and Delsam Pharma Artificial Tears products in May 2022.  *Id.* ¶ 27.  On February 1, 2023, EzriCare advised that although it was "not aware of any testing that definitively link[ed] the *Pseudomonas aeruginosa* outbreak to EzriCare Artificial Tears," it had stopped distribution and sale of the product, and instructed customers to stop using the product.  *Id.* ¶ 34 (quotation marks omitted).  The same day, Global Pharma voluntarily recalled all unexpired lots of EzriCare Artificial Tears and Delsam Pharma Artificial Tears.  *Id.* ¶

---

[2] The Court would call the jurisdictional allegations imperfect.  An LLC has the citizenship of its members, and the Amended Complaint does not resolve or address that nuance.  *See Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).

35.  On February 2, 2023, the FDA issued a warning to consumers and health care practitioners to stop purchasing and using EzriCare Artificial Tears and Delsam Pharma Artificial Tears due to contamination.  *Id.* ¶ 35.  The U.S. Food and Drug Administration also recommended a recall of the products.  *Id.* ¶ 36.  Upon inspection of Global Pharma's manufacturing facility, the FDA found a number of manufacturing violations.  *Id.* ¶ 38.  Reported injuries from the use of the artificial tears products have included infection, permanent vision loss, eyeball removal, and death.  *Id.* ¶ 32.

Plaintiff Mosley, a citizen and resident of Kentucky, purchased EzriCare Artificial Tears from a Walmart in Kentucky.  *Id.* ¶ 5.  Plaintiff McMillan is a citizen and resident of South Carolina who purchased Delsam Pharma Artificial Tears at a Piggly Wiggly in South Carolina. *Id.* ¶ 6.  Plaintiffs state that they were unaware that Defendants' artificial tears products "may be adulterated and contaminated," and assumed that the "labeling" of the products was "accurate." *Id.* ¶¶ 5–6.  Consequently, Plaintiffs claim that they "suffered injury in fact when [they] spent money to purchase products [they] would not otherwise have purchased" and suffered "personal injury as a result of [their] use of" EzriCare Artificial Tears and/or Delsam Pharma Artificial Tears.  *Id*.  Although they use the term "personal injury," the case only concerns economic loss not physical harm to Plaintiffs.

Mosley and McMillan sue individually and bring this lawsuit as a multi-state class action on behalf of "[a]ll consumers who purchased the EzriCare Artificial Tears and/or Delsam Pharma's Artificial Tears Products in the United States of America and its territories (excluding California) from May 1, 2022 to the present for personal use."  *Id.* ¶ 39.  In the alternative, Mosley and McMillan seek certification of Kentucky and South Carolina sub-classes on behalf of Kentucky and South Carolina consumers who purchased EzriCare Artificial Tears or Delsam

3

Pharma Artificial Tears in those states during the same time period. *Id.* ¶ 40. Plaintiffs bring the following claims against Defendants: unjust enrichment (Count III), negligent misrepresentation/omission (Count IV), breach of express warranty (Count V), breach of implied warranty (Count VI), and strict product liability under failure to warn and manufacturing defect theories (Count VII and Count VIII). *Id.* ¶¶ 93–151. Mosley also brings a claim under the Kentucky Consumer Protection Act[3] (KCPA) (Count I) on behalf of the Kentucky sub-class. *Id.* ¶¶ 54–73. Likewise, McMillan brings a claim under the South Carolina Unfair Trade Practice Act[4] ("SCUTPA") (Count II) on behalf of the South Carolina sub-class. *Id.* ¶¶ 74–92. The Court has yet to certify the proposed class action or sub-classes, and the parties have not moved for or completed any briefing on class certification.

Plaintiffs seek injunctive relief to enjoin Defendants from selling the EzriCare Artificial Tears and Delsam Pharma Artificial Tears products, and from "suggesting or implying" that the products are "safe and effective" for human use. *Id.* at p. 33. Further, Plaintiffs ask for an order requiring Defendants to "engage in a corrective advertising campaign" and an order awarding any "further retrospective or prospective injunctive relief." *Id.* Finally, Plaintiffs request damages and "restitution for the full purchase price of the artificial tear products they purchased." *Id.* ¶ 1.

EzriCare, EzriRx, and Delsam now move to dismiss the entirety of Plaintiffs' claims against them for, as applicable and specific to the movant or targeted plaintiff, lack of personal jurisdiction, lack of subject-matter jurisdiction, and failure to state a claim. *See* DE 64 (Delsam Motion); DE 65 (EzriRx Motion); DE 66 (EzriCare Motion). Plaintiffs responded, *see* DE 82,

---

[3] KRS §§ 367.170, 367.220.
[4] S.C. Code Ann §§ 39-5-10 *et seq.*

DE 83, DE 84, and Defendants filed their replies, *see* DE 89, DE 90, DE 91.  The matter is ripe for review.

## II.      Personal Jurisdiction

Both Delsam and EzriRx challenge the Amended Complaint on personal jurisdiction grounds and move to dismiss the action under Federal Rule of Civil Procedure 12(b)(2).  *See* DE 64-1 (Delsam Memorandum in Support) at 13–15; DE 65-1 (EzriRx Memorandum in Support) at 3–8.  EzriCare does not dispute that it is subject to the personal jurisdiction of this court.  *See generally* DE 66.  Because the determination of personal jurisdiction is a "threshold issue," *see Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010), the Court will first address the issue of personal jurisdiction as to Delsam and EzriRx.

### A.      Standard

A motion to dismiss under Rule 12(b)(2) involves a burden-shifting scheme.  *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022).  Where, as in this case, the court relies "solely on written submissions and affidavits" to resolve the motion, the plaintiff's burden is "relatively slight."  *Est. of Thomson ex rel. Est. of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (quotation omitted).  First, the plaintiff must establish a *prima facie* case for personal jurisdiction, which requires the plaintiff to show "with reasonable particularity, sufficient contacts between the defendant and the forum state to satisfy the relevant long-arm statute and the Due Process Clause."  *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020).  In doing so, the plaintiff may merely rely on the complaint.  *Peters Broad. Eng'g, Inc.*, 40 F.4th at 437.  If the plaintiff makes a *prima facie* showing, the burden shifts to the defendant to properly support its motion to dismiss with evidence.  *See id.*  After, and assuming, the defendant meets that burden, the burden shifts back

to the plaintiff, "who may no longer 'stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Malone*, 965 F.3d at 504 (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991)).   In ruling on a Rule 12(b)(2) motion, the court "construe[s] the facts in the light most favorable" to the plaintiff, avoiding consideration of any conflicting facts submitted by the defendant.   *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).   That beneficent construction extends to pleadings and affidavits.   *See Estate of Rakestraw*, 545 F.3d at 360.

### B.   Types of Personal Jurisdiction

Two types of personal jurisdiction exist: general and specific.   *See Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 396 (6th Cir. 2021).

A court has general jurisdiction over a defendant where "the defendant's affiliations with the forum state are 'so continuous and systematic as to render' the defendant 'essentially at home' there."   *Malone*, 965 F.3d at 501–02 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).   Typically, a corporation is "at home" in the states where it is incorporated and/or headquartered.   *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.'") (citation, quotation marks, and brackets omitted).

A court may exercise specific jurisdiction over a defendant only if the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum."   *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (citation and quotation marks omitted). Specific jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum [s]tate and is therefore subject to the [s]tate's regulation."   *Id.* (citation, quotation marks, and brackets omitted). A

federal court does not have specific jurisdiction over an out-of-state defendant unless (1) the law of the forum state would authorize jurisdiction, and (2) the exercise of jurisdiction is "compatible with the due process requirements of the United States Constitution." *Malone*, 965 F.3d at 502 (citation and quotation marks omitted).

While consistent with and informed by Constitutional limitations, Kentucky's long-arm statute (KRS § 454.210) is not coextensive with federal due process. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011). To establish specific jurisdiction under Kentucky law, a plaintiff must pass two jurisdictional hurdles. *See id.* at 57 ("[T]he statute operates independently of federal due process analysis.").

First, the plaintiff must establish that the defendant's conduct fits into one of the statute's nine enumerated categories[5] and that the plaintiff's claim "arises" from that particular conduct. *See id.* A claim arises from certain conduct when "there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." *Id.* at 59. Put simply, "the statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.*

Second, the plaintiff must show that the exercise of specific jurisdiction would comport with federal due process. *See id.* at 57. Specific jurisdiction comports with federal due process only when the exercise of jurisdiction does not offend "'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at 1459 (quoting *International Shoe Co. v. Washington*, 66 S. Ct. 154, 158 (1945)). This standard is met if (1) the defendant "purposefully avail[ed itself] of the privilege of acting in the forum state or causing a consequence in the forum

---

[5] In this way, Kentucky's long-arm statute creates a narrower scope of specific jurisdiction than does federal due process—i.e., even if the plaintiff's claim "arises" out of the defendant's contacts with Kentucky, this may still not be sufficient to support jurisdiction under Kentucky state law if the contacts do not fall within an enumerated category. *See Caesars*, 336 S.W.3d at 56.

state;" (2) the cause of action "arise[s] from the defendant's activities there;" and (3) the defendant's actions or their consequences have a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Neogen Corp.*, 282 F.3d at 890 (citation and quotation marks omitted). "[A]n inference of reasonableness arises where the first two criteria are met," and "only the unusual case will not meet this third criterion." *Theunissen*, 935 F.2d at 1461 (citation and quotation marks omitted). In analyzing the third criterion, a court should consider "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 552 (6th Cir. 2016) (citation and quotation marks omitted).

### C.   Personal Jurisdiction over Delsam

Plaintiffs do not appear to dispute that the Court lacks general jurisdiction over Delsam. *See* DE 82 at 5–8. As alleged, Delsam is a New York limited liability company with a New York headquarters, and Plaintiffs do not in any way suggest that Delsam's affiliations with Kentucky are such that the corporation is essentially "at home" in the state. Am. Compl. ¶ 9. Therefore, the focus of the personal jurisdiction inquiry is whether the Court has specific jurisdiction over Delsam.

Delsam argues that the Court lacks specific jurisdiction because the named plaintiffs' claims do not "arise" from its activities in Kentucky: Mosley's claims cannot arise from Delsam's conduct in Kentucky because he didn't purchase a Delsam product. *See* DE 64-1 at 15. McMillan's claims cannot arise from Delsam's conduct in Kentucky because she purchased a Delsam product in South Carolina. *See id.*

In response to Delsam's motion, Plaintiffs maintain that the Court has specific jurisdiction over Delsam because "representative plaintiffs in class action lawsuits are not precluded, as a matter of standing, from bringing representative claims on behalf of residents of states other than their own." DE 82 at 5. Because, according to Plaintiffs, McMillan has *standing* to sue Delsam, this Court has specific jurisdiction over Delsam "so long as one or more class members lives in the state of Kentucky and has viable claims." *Id.* at 6–7. Since the Amended Complaint alleges that the proposed class members have purchased Delsam Pharma Artificial Tears in Kentucky, Plaintiffs argue that this is sufficient to establish personal jurisdiction. *Id.* However, in any event, Plaintiffs claim that the jurisdictional argument is "premature" at this time because the class is not yet certified. *Id.* at 7.

Plaintiffs' arguments plainly misstate the law. First, Plaintiffs conflate standing with personal jurisdiction, which are two separate requirements. Further, in class action lawsuits, the court must at least have personal jurisdiction over the defendant vis-à-vis each named plaintiff. *Lyngaas v. Ag*, 992 F.3d 412, 433 (6th Cir. 2021); *see also Canaday*, 9 F.4th at 402 ("[O]nly the named plaintiff in a class action must satisfy personal jurisdiction requirements."); *Wiggins v. Bank of Am., N. Am.*, 488 F. Supp. 3d 611, 623 (S.D. Ohio 2020) ("[I]t is clear that at a minimum the named Plaintiffs must show their claims provide the Court personal jurisdiction over Defendants."); *Summit Gardens Assocs. v. CSC Serviceworks, Inc.*, Case No. 1:17 CV 2553, 2018 WL 8898456, at *3 (N.D. Ohio June 1, 2018) ("[U]nnamed class members are irrelevant to the question of specific personal jurisdiction."). Whether or not the other putative class members have claims arising from Delsam's conduct in Kentucky is immaterial at this stage, particularly prior to class certification. What matters is if Mosley and McMillan can connect their claims to Delsam's Kentucky contacts. Finally, contrary to Plaintiffs' characterization otherwise,

"[p]ersonal jurisdiction over a defendant is a threshold issue[.]"  *See Citizens Bank*, 376 F. App'x at 501.  The Court's consideration of personal jurisdiction is proper (and necessary) at this time.

Based on the face of the Amended Complaint, Plaintiffs cannot meet their slight burden to make even a *prima facie* showing that the Court has specific jurisdiction over Delsam. Overall, Plaintiffs' failure to establish that their claims arise out of Delsam's contacts with Kentucky proves fatal to their assertion of specific jurisdiction.

As related to Delsam's contacts with Kentucky, Plaintiffs allege that Delsam is "authorized to conduct and do business in Kentucky," and "marketed, promoted, distributed, and sold" its artificial tears products in Kentucky.  Am. Compl. ¶ 3.  Although Plaintiffs must connect these activities to an enumerated category of conduct under the Kentucky long-arm statute, Plaintiffs make no attempt to identify any applicable statutory category.  Considering Plaintiffs' allegations, Delsam's conduct most likely fits within one or more of the following statutory categories: transacting business in Kentucky; contracting to supply goods in Kentucky; causing a tortious injury in Kentucky; causing a tortious injury in Kentucky through an action outside of Kentucky while regularly doing business in Kentucky; and/or causing an injury in Kentucky through a breach of warranty in a sale outside of Kentucky while regularly doing business in Kentucky.  *See* § 454.210(2)(a).

Assuming (a broad stretch) the alleged activities fall within an enumerated category, the allegations say nothing to specifically tie Delsam's conduct in Kentucky to the claims of Mosley or McMillan.  Without that tie, the Amended Complaint cannot establish the requisite nexus between the named plaintiffs' claims and Delsam's Kentucky activities.  *Doe v. Siemens Med. Sols. USA, Inc.*, CIVIL ACTION NO. 5:22-76-KKC, 2023 WL 2600445, at *2 (E.D. Ky. Mar. 22, 2023) (declining to exercise personal jurisdiction where the plaintiffs made "no attempt to tie

any individual plaintiff—including the one Kentucky resident—to any events that actually took place in Kentucky"). As a matter of logic, Mosley's claims do not arise from any of Delsam's activities in Kentucky (or elsewhere) because he did not purchase a Delsam product and has no complaint as to that Defendant. As alleged, his claims instead arise from EzriCare's and/or EzriRx's conduct in Kentucky, since he purchased EzriCare Artificial Tears in the state.[6] *See* Am. Compl. ¶ 5. While McMillan indeed bought a Delsam product, that purchase occurred in South Carolina. *See id.* ¶ 6. And, because McMillan is a South Carolina citizen, her alleged injury also occurred in South Carolina. *See id.* No other allegations link McMillan's claims to Kentucky. Therefore, her claims, such as they might be, arise from Delsam's business transactions in *South Carolina*, not Kentucky. In this way, Mosley and McMillan independently possess only an unintegrated fraction of the connection necessary for this Court to reasonably exercise specific jurisdiction over Delsam. Mosley has a connection to Kentucky but not to Delsam; McMillan has a connection to Delsam but not to Kentucky. Absent a throughline from Delsam to Kentucky to Plaintiffs' claims, the Amended Complaint contains no jurisdictional hook for this Court to grasp onto.

Plaintiffs argue that "[t]he lawsuit's claims against Delsam arise out of the sale of the Delsam Artificial Tears to consumers in Kentucky (as well as in other locations) with misleading claims about safety," and therefore, "[t]here is clearly a connection between the chosen forum and the underlying controversy, as, for those proposed class members who purchased the product in Kentucky, the injury occurred there." DE 82 at 7. As set forth above, the relevant inquiry at this point is whether the claims of Mosley and McMillan—the named plaintiffs—arise from

---

[6] Because the focus of Plaintiffs' response is on the relationship between McMillan's claims and Delsam, Plaintiffs do not appear to challenge the notion that the Court lacks personal jurisdiction over Mosley's claims against Delsam. However, for the sake of completeness, the Court also addresses whether Mosley's claims allow the Court to exercise personal jurisdiction over Delsam.

Delsam's transactions in Kentucky.  They do not.  Plaintiffs cannot impute whatever connections may exist between Kentucky and the claims of  proposed class members onto Mosley and McMillan in order to create personal jurisdiction.

Since Plaintiffs have not adequately shown that their claims arise out Delsam's Kentucky conduct, Kentucky law would not authorize specific jurisdiction over Delsam.  Moreover, the Court's exercise of specific jurisdiction over Delsam would not comport with federal due process, which also requires Plaintiffs' claims to "arise" from Delsam's activities in Kentucky. *See Neogen Corp.*, 282 F.3d at 890.  Therefore, the Court also lacks specific jurisdiction over Delsam because the conferral of jurisdiction in these circumstances is unreasonable and incompatible with Constitutional requirements.

Plaintiffs have not met their *prima facie* burden to show that the Court has either general or specific jurisdiction over Delsam.  Accordingly, the Court cannot exercise personal jurisdiction over Delsam, and the Court grants Delsam's motion to dismiss for lack of personal jurisdiction.  The dismissal will be without prejudice.[7]

### D.    Personal Jurisdiction Over EzriRx

As to EzriRx, Plaintiffs only address specific jurisdiction and do not challenge the argument that the Court lacks general jurisdiction over EzriRx.  *See* DE 84 at 6.  The Amended Complaint alleges that EzriRx is headquartered in New Jersey and incorporated in Delaware. *See* Am. Compl. ¶ 8.  Therefore, courts in those two states presumptively have general jurisdiction over EzriRx.  Plaintiffs do not allege that EzriRx's contacts with Kentucky render the corporation "at home" in the state as to allow this Court to exercise general jurisdiction over EzriRx.  Thus, the Court too will only address whether it has specific jurisdiction over EzriRx.

---

[7] Any request to amend, alluded to at DE 82 n. 7, must come by motion, not by footnote in dismissal briefing.

Further, Plaintiffs do not attempt to assert specific jurisdiction via McMillan's claims. This makes good sense and flows from the principles of the prior Delsam analysis. McMillan's claims cannot "arise from" EzriRx's conduct in Kentucky because she did not purchase an EzriRx product, and her purchase (and alleged injury) involved Delsam and occurred in South Carolina. Am. Compl. ¶ 6. Because the Court cannot exercise specific jurisdiction over EzriRx based on McMillan's claims, the Court grants EzriRx's motion as to McMillan's claims against EzriRx. The Court will only assess specific jurisdiction through the lens of Mosley's claims.

In making his *prima facie* case, Mosley relies on the following allegations: EzriRx, in conjunction with EzriCare and Global Pharma, "markets, advertises, labels, distributes, and sells" its artificial tears products in Kentucky. Am. Compl. ¶¶ 3, 7–8, 35. EzriRx also registered and licensed the "EzriCare" trademark as used on the EzriCare Artificial Tears product. *Id.* ¶ 7. Mosley purchased EzriCare Artificial Tears From a Walmart in Kentucky, but he would not have bought the product if he knew it was contaminated. *Id.* ¶ 5. Consequently, Mosley "spent money to purchase products he would not otherwise have purchased" and "suffered economic damages." *Id.* ¶¶ 1, 5.

Mosley states that this conduct fits within the Kentucky long-arm statute, specifically, the categories of transacting business in Kentucky, contracting to supply goods in Kentucky, and causing injury in Kentucky through an act or omission. *See* DE 84 at 8. These categories appropriately align with EzriRx's alleged Kentucky actions, as alleged in the Amended Complaint. EzriRx transacted business in Kentucky by trademarking EzriCare Artificial Tears, and marketing, advertising, labeling, and selling the products in Kentucky, including the product that Mosley later purchased. *See* Am. Compl. ¶¶ 3, 7–8, 35. In distributing EzriCare Artificial Tears, EzriRx contracted to supply the product to retailers like the Kentucky Walmart where

Mosley made his purchase. *Id.* ¶ 5. And EzriRx misrepresented the safety of EzriCare Artificial Tears and failed to include adequate warnings in its labeling, which were acts and omissions that caused Mosley—a Kentucky citizen—claimed economic injury. *Id.* ¶ 1, 5.

So far, so good. But has Mosley pleaded sufficient allegations to establish that his claims arise from EzriRx's Kentucky conduct, as contemplated by the long-arm statute? While the jurisdictional facts are not especially voluminous, the Amended Complaint, on its own, is enough for Mosley to meet his "relatively slight" burden of a *prima facie* showing. *See Est. of Thomson*, 545 at 360. Due to EzriRx's transaction of business in Kentucky, supply contracts with or distribution to Kentucky retailers, and injurious actions in Kentucky, Mosley unknowingly purchased an allegedly contaminated EzriCare Artificial Tears product at a Kentucky Walmart. According to the Amended Complaint, he suffered economic damages as a result, forming the basis of his claim. The causal connection between EzriRx's Kentucky conduct and Mosley's alleged injury constitutes a reasonable nexus that makes the exercise of specific jurisdiction proper, meeting the forgiving burden. *See Malone*, 965 F.3d at 504 (finding that the plaintiffs made a *prima facie* showing of specific jurisdiction based only on allegations that the defendant "conducted business in Ohio;" was in the "business of making, marketing, distributing, and selling table saws;" "negligently manufactured, designed, assembled, distributed, sold, and otherwise furnished" the saw that injured the plaintiff; failed to warn about the saw's dangers; and the defendant's negligence and failure to warn were "proximate causes of the [plaintiffs] injuries"). Therefore, under Kentucky law, the Amended Complaint establishes that Mosley's claims arise out of EzriRx's Kentucky conduct.

Mosley has also shown that the Court's exercise of specific jurisdiction over EzriRx comports with federal due process. Again, his causes of action arise from EzriRx's alleged

14

activities in Kentucky.  EzriRx purposefully availed itself of the privilege of transacting business in Kentucky through marketing, advertising, labeling, and selling EzriCare Artificial Tears (a product that EzriRx trademarks) in Kentucky.  EzriRx's actions therefore were directed at and occurred within Kentucky.  *Means v. United States Conf. of Cath. Bishops*, 836 F.3d 643, 649 (6th Cir. 2016) ("Purposeful availment is present where the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum state.") (citation and quotation marks omitted); *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478–79 (6th Cir. 2003) ("The emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state.") (citation and quotation marks omitted).  For all of these reasons, and recognizing Kentucky's interest in providing relief to residents who have sustained product liability injuries, EzriRx's activities have enough of a connection to Kentucky to make this Court's exercise of specific jurisdiction over the corporation reasonable.

Based solely on the allegations of the Amended Complaint, the Court's exercise of specific jurisdiction over EzriRx is authorized by Kentucky law and consistent with the constitutional bounds of federal due process.  Therefore, Mosley has met his burden to establish a *prima facie* case of specific jurisdiction over EzriRx.

The burden now shifts to EzriRx to defeat Mosley's *prima facie* case by properly supporting its motion to dismiss with evidence showing that the Court lacks specific jurisdiction.  To do so, EzriRx submits an affidavit from Ezriel Green, the company's CEO.  *See* DE 65-2 (Green Affidavit) ¶ 3.  Green states that EzriRx is "an online marketplace platform that assists pharmacies in purchasing prescription medications, over-the-counter drugs, and pet medication," and therefore, "EzriRx does not sell directly to consumers."  *Id.* ¶¶ 7–8.  Because EzriRx

operates as business-to-business marketplace that does not sell directly to consumers, EzriRx argues that its alleged Kentucky activities have no connection to this particular lawsuit. DE 65-1 at 5–7. Mosley's claims do not "arise" from any actions EzriRx took in Kentucky since he could not purchase EzriCare Artificial Tears from EzriRx as a consumer, and there are no allegations that he bought the product on behalf of a pharmacy. *Id.* at 5. According to EzriRx, this means that the Court lacks specific jurisdiction. *See id.* at 5–7. This hardly slams the door.

The scant evidence that EzriRx provides in its affidavit does not properly rebut Mosley's *prima facie* case for a couple reasons. For one, as alleged, *other* contacts link EzriRx to this lawsuit that are sufficient to confer jurisdiction on this Court. EzriRx registers and licenses the EzriCare trademark for the EzriCare Artificial Tears product, which it labels, markets, distributes, and sells in Kentucky. The fact that Mosley could not purchase EzriCare Artificial Tears directly from the EzriRx marketplace does not alter the nature of EzriRx's claimed contacts with Kentucky. The Amended Complaint alleges that EzriRx distributes and sells EzriCare Artificial Tears in Kentucky, i.e., plausibly to retailers that can use EzriRx's marketplace, including, presumably, the Walmart where Mosley purchased the product. Notably, EzriRx does not dispute that it engages in the Kentucky-related activities set forth in the Amended Complaint. Plaintiffs raise essentially identical allegations against EzriCare, who does not challenge the Court's jurisdiction. Without the benefit of discovery, the exact relationship between EzriRx, EzriCare, and the EzriCare Artificial Tears product, including the distribution chain, is unclear. Discovery will the provide the necessary clarity on the actual link (or lack thereof) between EzriRx, its Kentucky conduct, and Mosley's claims. For now, construing the facts in Mosley's favor, the Amended Complaint adequately establishes that his claims arise from EzriRx's

Kentucky conduct; EzriRx's motion to dismiss does not provide enough convincing evidence to overcome the *prima facie* case.

Therefore, the Court denies EzriRx's motion to dismiss for lack of personal jurisdiction. Since the motion was premised only on EzriRx's jurisdictional objections, not claim merits, all of Mosley's claims against EzriRx potentially survive dismissal.[8]  If discovery casts further doubt on the Court's personal jurisdiction over EzriRx, EzriRx may revive its challenge through a properly filed motion.

## III.    Standing

EzriCare moves to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, premised on three separate standing arguments: First, McMillan lacks individual standing to bring claims against EzriCare.  *See* DE 66-1 at 8–10.  Second, the majority of Plaintiffs' claims are inappropriate for resolution by a multi-state class action.  *See id.* at 7–8.  Third, Plaintiffs' request for injunctive relief fails because neither plaintiff has alleged adequately a risk of future harm.  *See id.* at 11–12.  The Court will address each standing argument in turn.

### A.    Standard

"Article III limits the judicial power to resolving actual 'Cases' and 'Controversies' . . ." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860–61 (6th Cir. 2020) (quoting U.S. Const. Art. III, § 2).  "[O]ne telltale of a case or controversy is that the parties have standing to bring it." *Id.* (citation and quotation marks omitted).  "The 'irreducible constitutional minimum of standing' requires the plaintiff to show three elements." *Tennessee v. United States Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 112 S. Ct. 2130, 2136

---

[8] Though the EzriCare analysis will, where applicable and for judicial economy, dictate like treatment.

(1992)).  A plaintiff has standing to pursue a claim if the plaintiff establishes (1) an injury in fact; (2) causation; and (3) redressability.  *ACLU v. NSA*, 493 F.3d 644, 659 (6th Cir. 2007).  A plaintiff fulfills the injury in fact element upon a showing of "concrete and actual or imminent" harm, rather than harm that is merely "hypothetical, conjectural, or speculative."  *Id.* at 656, 659 (citation and quotation marks omitted).  Causation requires "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant."  *Id.* at 659 (citations and quotation marks omitted).  And redressability means that the requested relief is likely to "redress the alleged injury."  *Id.* (citations and quotation marks omitted).

Standing is a "jurisdictional requirement."  *Tennessee Gen. Assembly*, 931 F.3d at 507 (citation and quotation marks omitted).  Therefore, if a plaintiff lacks standing, then the court lacks subject-matter jurisdiction.  *See id.*  Without subject-matter jurisdiction, the court "cannot proceed at all in any cause."  *Id.* (citation and quotation marks omitted).  A facial challenge to subject-matter jurisdiction under Rule 12(b)(1), like EzriCare's challenge here, "goes to the question of whether the plaintiff has *alleged* a basis for subject[-]matter jurisdiction."  *L. C. v. United States*, 83 F.4th 534, 542 (6th Cir. 2023) (emphasis added) (citations and quotation marks omitted).  In assessing a facial challenge to subject-matter jurisdiction, the court must "treat the allegations of the complaint as true."  *Id.* (citations and quotation marks omitted).

B.      **Standing for Plaintiff McMillan's Claims**

McMillan concedes that she does not "assert that she has standing to sue EzriCare."  DE 83 at 9 n.6.  It is clear from the face of the Amended Complaint that McMillan does not have standing to bring claims against EzriCare.  A plaintiff "cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands [s]he suffered no injury.  This is true even though the plaintiff may have suffered an injury

identical to that of the other parties [s]he is representing." *Liberte Cap. Grp., LLC v. Capwill*, 148 F. App'x 413, 417 (6th Cir. 2005) (citation and quotation marks omitted).  McMillan's alleged injury arises from her purchase of Delsam Artificial Tears, which, although similar to EzriCare Artificial Tears, is a product associated with an entirely different entity than EzriCare. *Id.* ¶ 6.  She does not allege that she purchased an EzriCare product or that she was otherwise specifically harmed by EzriCare.  Since McMillan has not established that she suffered an injury in fact at the hands of EzriCare, she lacks standing to pursue a claim against it.  *See Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 696 (E.D. Mich. 2020) (explaining that plaintiffs only have standing to assert product liability claims if they "experienced injury stemming from the purchase of that product" and finding in that case, the plaintiffs "[could not] assert claims pertaining to defects" in products "none of them purchased") (citation and quotation marks omitted).

The Court accordingly grants EzriCare's motion to dismiss McMillan's claims for lack of standing.  This leaves Mosley as the sole named plaintiff with standing to bring claims against EzriCare.  The Court will assess the remainder of the standing arguments based on Mosley's claims.

### C.     Standing for Multi-State Class Action Claims

Next, EzriCare argues that a majority of Mosley's claims (Counts III through VIII)[9] "are not suitable for nationwide class treatment," and therefore, the Court should dismiss those claims for lack of standing.  *See* DE 66-1 at 7.

---

[9] These claims are Unjust Enrichment (Count III), Negligent Misrepresentation/Omission (Count IV), Breach of Express Warranty (Count V), Breach of Implied Warranty (Count VI), Strict Product Liability – Failure to Warn (Count VII), and Strict Product Liability – Manufacturing Defect (Count VIII).

As a whole, courts have reached inconsistent results as to whether unjust enrichment, fraud, warranty, and products liability claims are suitable for resolution by multi-state class actions.  *See, e.g., Forsher v. J.M. Smucker Co.*, 612 F. Supp. 3d 714, 726 (N.D. Ohio 2020) (holding certification of lawsuit for breach of express warranty in 44 states was "unmanageable and fatal even at the pleading stage because breach of express warranty varies widely from state to state"); *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, Case No. 1:16-cv-448, 2016 WL 10520133, at *5 (S.D. Ohio Dec. 15, 2016) ("As a threshold matter, courts disagree as to whether states' unjust enrichment laws vary to any significant degree."); *Hoving v. Laws. Title Ins. Co.*, 256 F.R.D. 555, 568 (E.D. Mich. 2009) (allowing multi-state class certification of unjust enrichment claims); *Chesner v. Stewart Title Guar. Co.*, No. 1:06CV00476, 2008 WL 553773, at *14 (N.D. Ohio Jan. 23, 2008) (finding certification of unjust enrichment claims "untenable"); *Wethington v. Purdue Pharma LP*, 218 F.R.D. 577, 584 (S.D. Ohio 2003) ("The Court does not find well-taken the proposition that pharmaceutical personal-injury products-liability actions are, as a rule, inappropriate for class certification."); *Rosen v. Chrysler Corp.*, No. 97-CV-60374-AA, 2000 WL 34609135, at *12 (E.D. Mich. July 18, 2000) (declining to certify class of fraud claims because "the court would need to instruct a jury on the consumer protection laws of 50 jurisdictions," which is an "unacceptable scenario").  While some courts have resolved the issue at the motion to dismiss stage, *see Forsher*, 612 F. Supp. 3d at 727, the Court finds that the determination of whether these causes of action are suitable for multi-state class certification is premature, absent further briefing on class certification.[10]  *But see Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 694 (E.D. Mich. 2020) ("[Defendant's] arguments

---

[10] Although EzriCare casts its multi-state argument as a standing issue, the argument is perhaps more fitting as a challenge to class certification.  Regardless, the Court's determination is premature at this time.

premised on potential issues with class certification are procedurally premature where no motion to certify a class has yet been filed, and the Court has not received or invited complete briefing on all of the pertinent factors under Rule 23.").

Thus, the Court denies EzriCare's motion to dismiss the unjust enrichment, negligent misrepresentation, breach of express warranty, breach of implied warranty, and strict product liability claims for lack of standing.

### D.   Injunctive Relief

Finally, EzriCare argues that Mosley has no claim for injunctive relief because he does not "allege any intention to buy [EzriCare Artificial Tears] in the future." DE 66-1 at 11–12. Moreover, as set forth in the Amended Complaint, the product "has been universally recalled," EzriCare has "ceased operations," and Mosley is "now aware of the CDC and FDA's statements." *Id.* Therefore, EzriCare contends that Mosley has not established a likelihood of future harm, and injunctive relief is improper. *See id.*

"Past harm allows a plaintiff to seek damages, but it does not entitle a plaintiff to seek injunctive or declaratory relief." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019). Instead, "to obtain declaratory or injunctive relief, a claimant must show a present ongoing harm or imminent future harm." *Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020). The harm must be "concrete and particularized," "not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009).

To the extent that Mosley seeks "retrospective" injunctive relief or "injunctive relief to remedy [EzriCare's] past conduct," these demands concern remedies for past harm, and injunctive relief is inappropriate and not available. *See* Am. Compl. at p. 33.

For the remainder of the injunctive relief sought, Mosley asks the Court to enjoin EzriCare from selling EzriCare Artificial Tears, and from "suggesting or implying" that the products are "safe and effective" for human use.  *Id.*  Mosley also seeks an order requiring EzriCare to "engage in a corrective advertising campaign" and an order awarding any "prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged." *Id.*  But such requests are inconsistent with his other allegations, which do not establish any ongoing or imminent threat of future harm.  The Amended Complaint is devoid of any specific, non-conclusory allegation that EzriCare is continuing to market or sell any of the allegedly contaminated EzriCare Artificial Tears product. In fact, any factual allegation is to the contrary and inconsistent with the relief sought; the Amended Complaint states that EzriCare "took action to stop any further distribution or sale of EzriCare Artificial Tears" and that Global Pharma "initiated a voluntary recall of all unexpired lots of EzriCare Artificial Tears."  Am. Compl. ¶¶ 34–35.  Moreover, Mosley has not stated an intention to purchase EzriCare Artificial Tears in the future. *See, e.g.*, *Lyman v. Ford Motor Co.*, Case No.: 21-cv-10024, 2022 WL 856393, at *10 (E.D. Mich. Mar. 22, 2022) (aggrieved purchasers and lessors of Ford trucks were not entitled injunctive relief where the plaintiffs "[did] not allege a threat of future harm from a future vehicle purchase from Ford"); *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 658 (E.D. Mich. 2021) ("Where a plaintiff does not allege that they intend to purchase from a defendant manufacturer again, they cannot maintain a claim for injunctive relief as to that defendant's advertising or marketing.").  Instead, he claims that he "would be interested in purchasing similar artificial tears products in the future provided they are not adulterated and/or contaminated."  Am. Compl. ¶ 5.  However, a mere interest in purchasing similar products only creates the *possibility* of an analogous harm; such  harm plainly is

"conjectural" or "hypothetical."   Because Mosley has not alleged that EzriCare will imminently inflict future harm on him, he may not seek injunctive relief against EzriCare.  *Ohio v. Yellen*, 53 F.4th 983, 990 (6th Cir. 2022) ("But there is, of course, no jurisdiction for injunctive relief unless the plaintiff establishes why a past harm is inflicting some injury at present or is likely to inflict some injury in the future.").

Accordingly, the Court grants EzriCare's motion to dismiss Mosley's request for injunctive relief for lack of standing.

**IV.     Failure to State a Claim**

EzriCare moves to dismiss the entire Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because it constitutes an impermissible "shotgun pleading."  DE 66-1 at 5–6.  EzriCare also moves under Rule 12(b)(6) to dismiss Counts I, II, VII, and VIII for failure to state a claim.  *See id.* at 8–9, 10–15.  Because the Court has already found that McMillan lacks standing to pursue claims against EzriCare, the Court will only address Mosley's claims, which are the remaining claims against the entity.

**A.     Standard**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  However, "a formulaic recitation of a cause of action's elements will not do."  *Twombly*, 127 S. Ct. at 1965.  Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that a claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Where a plaintiff states "simply, concisely, and directly events that . . . entitle[] them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement." *Id.*; *El-Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.").

### B.      Shotgun Pleading

EzriCare claims that the Amended Complaint "impermissibly lumps all Defendants together," and "make[s] no specific argument regarding what any one Defendant has done as compared to the others" DE 66-1 at 6. According to EzriCare, it is "implausible that Plaintiffs have the same allegations against EzriCare" and the other defendants. *Id.*

A shotgun pleading may take a few different forms—it includes when a complaint "fail[s] to connect specific facts or events with the various causes of action . . . asserted" or when the plaintiff "fail[s] to separate each of [his] causes of action or claims for relief in separate counts." *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392–93 (6th Cir. 2020) (citation and quotation marks omitted). The hallmarks of a shotgun pleading are that the complaint makes it "virtually impossible for a defendant to know which allegations of fact are intended to support which claims for relief," *Darwish v. Ethicon, Inc.*, Case No. 1:20 CV 1606, 2020 WL 7129582, at *10 (N.D. Ohio Dec. 4, 2020) (citation and quotation marks omitted), and "fails to provide notice regarding which specific defendant is liable for which count," *Bonner v. Equifax Info. Servs., LLC*, CASE NO. 5:20-CV-00175-TBR, 2021 WL 4392955, at *2 (W.D. Ky. Sept. 24, 2021) (citation and quotation marks omitted).

The Amended Complaint, while surely not perfect, does not constitute a shotgun pleading because it states specific facts in accordance with each cause of action, connecting allegations to each individual claim for relief such that EzriCare can discern which facts support which claim. *See* Am. Compl. ¶¶ 54–151. The pleading also breaks down each cause of action separately and specifies that all defendants are liable for each count. *See id.* Elsewhere in the Amended Complaint, Mosley sets forth factual allegations against EzriCare, including whole product labels, separate from factual allegations against other defendants. *See id.* at ¶¶ 5–22, 33–38. The overlapping allegations against the defendants do not transform the Amended Complaint into a shotgun pleading; the allegations are similar because the premise of the Amended Complaint is that EzriCare and its co-defendants engaged in similar conduct. At this point, before discovery and before more is known about each defendant's role in getting the relevant products to the market, the Amended Complaint is sufficient.

Therefore, the Amended Complaint is not subject to dismissal on this ground, and the Court denies EzriCare's motion.

### C.     Violation of the Kentucky Consumer Protection Act (KCPA) (Count I)

To state a KCPA claim, a plaintiff must show that the seller engaged in "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," and that those practices caused the plaintiff harm. Ky. Rev. Stat. Ann. § 367.170(a); *Kempf v. Lumber Liquidators, Inc.*, Civil Action No. 3:16-cv-492-DJH, 2017 WL 4288903, at *3 (W.D. Ky. Sept. 27, 2017) (citing § 367.170(a)). "An action under the KCPA requires privity of contract between the parties." *PNC Bank, N.A. v. Merenbloom*, No. 15-6361, 2017 WL 3973962, at *3 (6th Cir. June 16, 2017); *Yonts v. Easton Tech. Prod., Inc.*, 676 F. App'x 413, 420 (6th Cir. 2017) ("[U]nder the KCPA, 'a subsequent purchaser may not maintain an action against a seller with

whom he did not deal.'") (quoting *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992)).

EzriCare argues that Mosley cannot state a KCPA claim because no privity exists between EzriCare and Mosley. *See* DE 66-1 at 10–11, 14–15. The Court agrees—Mosley specifically alleges that he purchased EzriCare Artificial Tears from Walmart, not EzriCare. Am. Compl. ¶ 5. Without a direct buyer-seller relationship between EzriCare and Mosley, there is no privity, and Mosley cannot maintain a KCPA claim.

Nonetheless, Mosley points to two cases out of the Western District of Kentucky in which the courts recognized an exception to KCPA's privity requirement: *Naiser v. Unilever U.S., Inc.*, 975 F.Supp.2d 727 (W.D. Ky. 2013) and *Miller v. Coty, Inc.*, No. 3:14-CV-00443-CRS, 2018 WL 1440608 (W.D. Ky. Mar. 22, 2018). DE 83 at 11–12. In *Naiser*, the district court held that even in the absence of a direct buyer-seller relationship, a plaintiff may still bring a KCPA claim where the seller "made valid express warranties for the benefit of Kentucky consumers." *Naiser*, 975 F. Supp. 2d at 743. Similarly, the district court in *Miller* cited to *Naiser* with approval and stated that a plaintiff may maintain a KCPA action by either establishing "privity of contract between buyer and seller" or "the existence of an express warranty for the benefit of the purchaser." *Miller*, 2018 WL 1440608, at *13. Mosley claims that EzriCare made express warranties to consumers like himself through "material misrepresentations and false warranties of safety for use as liquid tears" that "were directed at consumers[] and not at retailers." DE 83 at 11.

Mosley's position is untenable for two reasons. First, the Court declines to adopt *Naiser*'s express warranty exception, an exception that the Kentucky Supreme Court has yet to recognize. *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 962 (E.D. Ky. 2019)

("[N]othing suggests that the Kentucky Supreme Court would apply any rule other than the [strict privity requirement] . . . This Court therefore declines to follow *Naiser*[.]")  Other district courts, including ones in this district, have rejected the exception.  *See, e.g., id.*  Moreover,"[t]he opinions of other federal district courts, while persuasive, are not binding authority that this Court must follow."  *Nationwide Mut. Fire Ins. Co. v. Hatton*, 357 F. Supp. 3d 598, 605 (E.D. Ky. 2019).  Therefore, the Court will adhere to the strict privity requirement for KCPA claims.

Second, even if the Kentucky followed the express warranty exception, Mosley has not adequately shown that the exception applies.  He has not identified a particular "statement[]" that contains a "material misrepresentation[]" or a "false warrant[y]" directed at consumers.  Mosley has only posited a "formulaic recitation" of the express warranty exception without adequate factual support.  *Twombly*, 127 S. Ct. at 1965.  His argument fails on this separate ground.

Because Mosley has not established privity between himself and EzriCare, the Court must dismiss the KCPA claim.  Accordingly, the Court grants EzriCare's motion to dismiss the KCPA claim.

### D.    Violation of the South Carolina Unfair Trade Practices Act (SCUPTA) (Count II)

Plaintiffs "do not contest" the dismissal of the SCUPTA claim against EzriCare.  DE 83 at 11.  Therefore, the Court grants EzriCare's motion to dismiss the SCUPTA claim.

### E.    Strict Product Liability – Failure to Warn (Count VII) and Manufacturing Defect (Count VIII)

In Kentucky, a plaintiff may pursue a product liability claim based on a strict liability, negligence, or breach of warranty theory.  *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 773 (E.D. Ky. 2017).  Mosley takes the strict liability route.

For strict liability claims, Kentucky has adopted Restatement (Second) of Torts § 402A as applied to both manufacturers and sellers. *See Dealers Transp. Co. v. Battery Distrib. Co.*, 402 S.W.2d 441, 446–47 (Ky. Ct. App. 1965) (adopting § 402A); *see also Ford Motor Co. v. Fulkerson*, 812 S.W.2d 119, 122 (Ky. 1991) (recognizing that "Kentucky adopted the doctrine of 'strict liability' in products cases as stated in the Restatement, Second, Torts, § 402A, in the case of *Dealer's Transport Company v. Battery Distributing Company, Ky.*, 402 S.W.2d 441 (1966)"); *Eastridge v. Goodrich Corp.*, No. 3:12CV-862-S, 2013 WL 5460868, at *3 (W.D. Ky. Sept. 30, 2013) (same). § 402A provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for *physical harm* thereby caused to the ultimate user or consumer, or to his property, if
>
>> (a) the seller is engaged in the business of selling such a product, and
>>
>> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
>> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>>
>> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (Am. L. Inst. 1965) (emphasis added). Therefore, a manufacturer or seller is only liable under a strict liability theory upon a showing of "physical harm." *See id.* Kentucky courts have confirmed that a plaintiff must allege physical harm to state a strict liability claim. *See Wood v. Wyeth-Ayerst Lab'ys, Div. of Am. Home Prod.*, 82 S.W.3d 849, 852 (Ky. 2002) ("Just as a negligence claim must be supported by a resulting physical injury, so must a claim based on strict liability."); *see also Sims v. Atrium Med. Corp.*, 349 F. Supp. 3d 628, 638–39 (W.D. Ky. 2018) (in applying Kentucky law, explaining that a

plaintiff "plead[s] a plausible strict products liability claim" by establishing that the defective product resulted in "physical harm to the ultimate user or consumer or his property") (citation and quotation marks omitted); *Eastridge v. Goodrich Corp.*, 2013 WL 5460868, at *3 (In Kentucky, a "[strict product liability] provides for a cause of action for physical harm to persons or property caused by a product defect against a manufacturer or commercial seller of a product.").

As it relates to harm, the Amended Complaint primarily focuses on the "economic damages" Mosley suffered.  Am. Compl. ¶ 1.  Mosley claims that he "spent money to purchase" EzriCare Artificial Tears that he "would not otherwise have purchased."  *Id* ¶ 5.  He also states, free of detail, that he suffered "personal injury as a result of his use of EzriCare Artificial Tears." *Id.*  Notably missing is any allegation of physical harm.  While Mosley mentions "personal injury," such a conclusory statement is not sufficient to allege physical harm.  Mosley has not made the showing necessary to state a strict product liability claim.

In his response, Mosley concedes that he has not alleged physical harm, stating that he is "only seeking relief for economic loss" based on EzriCare's "misrepresentations about product safety."  DE 83 at 13–14.  He argues that to adequately plead a strict liability claim, he "need not plead that [he] suffered a physical injury traceable to the *product*" because he "correctly plead an economic injury traceable to [EzriCare's] *conduct*."  *Id.* at 14 (emphasis in original).  This is contrary to the law.  *See supra* at 27–28.  Absent a showing of physical harm, Mosley cannot maintain a strict product liability claim.

Since Mosley has not alleged that he experienced any physical harm from his use of EzriCare Artificial Tears, he fails to properly state the strict product liability failure to warn and

manufacturing defect claims.   Therefore, the Court grants EzriCare's motion to dismiss those claims.

V.        **Conclusion**

For the foregoing reasons, the Court **GRANTS** DE 64, **DENIES** DE 65, and **GRANTS in part** and **DENIES in part** DE 66.  Plaintiff Mosley may, at this posture, continue to pursue all of Counts III, IV, V, and VI against EzriCare.  Further, because the merits as to EzriRx and EzriCare are analytically parallel, the Court will likewise retain only Counts III, IV, V, and VI against EzriRx.[11]

This the 29th day of March, 2024.

**Signed By:**

**Robert E. Wier**

**United States District Judge**

---

[11] There is no personal jurisdiction as to McMillan's claims; indeed, she has none against EzriRx.  Count II properly falls.  Further, the lack of privity and lack of physical injury issues would be fatal to Mosley's Count I and VI-VIII claims against EzriRx, just as they were for those claims by him against EzriCare.  Efficiency calls for properly weeding the claims that necessarily fall under the same rubric, which the Court will do.